1 Sheryl W. Leichenger (SBN CA 161688)
SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
2 10880 Wilshire Blvd., Suite 1200
Los Angeles, CA 90024
3 Telephone: 310.445.0800
sleichenger@selmanlaw.com
4
5 Debra B. Branse (SBN CA 175771)
SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
33 New Montgomery, Suite 1850
6 San Francisco, CA 94105
Telephone: 415.979.0400
7 dbranse@selmanlaw.com

8 Attorneys for Plaintiff
SCOTTSDALE INSURANCE COMPANY
9

10

11

12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

13 SCOTTSDALE INSURANCE
COMPANY,
14
Plaintiff,
15
v.
16
SHORE MANAGEMENT, INC. DBA
17 SHORE MANAGEMENT; JUSTIN D.
HOECH; RICARDO DAXIMILLION
18 AND KEELY DAXIMILLION; and DOES
1-50 inclusive,
19
Defendants.
20

Case No. **'26 CV 0608 JLS  KSC**

SCOTTSDALE INSURANCE
COMPANY'S COMPLAINT FOR
DECLARATORY RELIEF

21

22      Plaintiff Scottsdale Insurance Company ("Scottsdale"), files this Complaint for

23 Declaratory Relief, alleging as follows:

24                              **THE PARTIES**

25      1.      Scottsdale is a corporation organized under the laws of the State of Ohio

26 with its principal place of business in Scottsdale, Arizona. At all times relevant herein,

27 Scottsdale is and was authorized to transact business as a surplus lines insurer in the

28 State of California.

1
SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1    2.    Scottsdale is informed and believes, and thereon alleges, that Defendant Shore Management, Inc. dba Shore Management ("Shore Management") is, and at all relevant times was, a corporation organized under the laws of the State of California with its principal place of business in San Diego, California.

3.    Scottsdale is informed and believes, and thereon alleges, that Defendant Justin D. Hoech ("Hoech") is, and at all times relevant was, an individual domiciled in the County of San Diego, California, and at all times relevant was the Chief Executive Officer of Shore Management. (Shore Management and Hoesch are hereinafter collectively referred to as "Shore Management").

4.    Scottsdale is informed and believes and thereon alleges that Defendant Ricardo Daximillion is, and at all times relevant was, an individual domiciled in the County of San Diego, California.

5.    Scottsdale is informed and believes and thereon alleges that Defendant Keely Daximillion is, and at all times relevant was, an individual domiciled in the County of San Diego, California. (Ricardo Daximillion and Keely Daximillion are hereinafter collectively referred to as "the Daximillions").

6.    Scottsdale alleges that the Daximillions may claim rights under the Scottsdale Policies for damages in the Underlying Action described below, and as such, are necessary parties so that the declaration of the parties' rights and duties will be binding upon all interested parties.

7.    Scottsdale is informed and believes, and thereon alleges, that Shore Management is, and at all times relevant herein was, making claims for insurance coverage against policy numbers CPS7713398, CPS7926501 and/or CPS8139174 issued by Scottsdale to named insured Shore Management (collectively the "Scottsdale Policies").

//

//

//

2

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION**

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 2201 because an actual controversy exists within the Court's jurisdiction that merits relief.

9.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and this action is between citizens of different states.

10.    This court has personal jurisdiction over the defendants, and each of them, as they have purposely availed themselves of the privilege of conducting activities in California. Further, the Underlying Action at issue arose out of defendants' activities in California.  Thus, it is reasonable for defendants to be subject to jurisdiction in California.

**VENUE**

11.    Venue is proper in the Southern District of California pursuant to U.S.C. § 1391 because the Underlying Action for which defendants seek coverage are currently pending in the Superior Court of California, County of San Diego.  As such, a substantial part of the events or omissions giving rise to these claims occurred here. Specifically, the Underlying Action and claims giving rise to it occurred in San Diego, California. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 because the defendants, and each of them, are either businesses authorized to conduct business in California, or are individuals residing in California, and are thus subject to personal jurisdiction here. Venue is therefore proper pursuant to 28 U.S.C. ¶ 1391(b) and 28 U.S.C., ¶ 1391(c).

**THE SCOTTSDALE POLICIES**

12.    Scottsdale issued a commercial general liability policy, policy no. CPS7713398, to Shore Management, Inc. dba Shore Management, effective January

3

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

23, 2023, to January 23, 2024 ("2023 Policy"). A true and correct copy of the 2023

Policy is attached as **Exhibit 1** and incorporated herein by reference.

13.   Scottsdale issued a commercial general liability policy, policy no.

CPS7926501, to Shore Management, Inc. dba Shore Management, effective January

23, 2024 to January 23, 2025 ("2024 Policy"). A true and correct copy of the 2024

Policy is attached as **Exhibit 2** and incorporated herein by reference.

14.   Scottsdale issued a commercial general liability policy, policy no.

CPS8139174, to Shore Management, Inc. dba Shore Management, effective January

23, 2025 to January 23, 2026 ("2025 Policy"). A true and correct copy of the 2025

Policy is attached as **Exhibit 3** and incorporated herein by reference. (The 2023

Policy, the 2024 Policy and the 2025 Policy are hereinafter collectively referred to as

the "Scottsdale Policies".)

15.   Coverage A of the Scottsdale Policies provides, in relevant part as

follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.    Insuring Agreement**
>
> **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> **(1)**   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> **(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts

4

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

16.    The Scottsdale Policies include the following relevant definitions:

---

**SECTION V – DEFINITIONS**

* * *

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**17.**    "Property damage" means:

   **a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. […]

* * *

---

17.    The Scottsdale Policies include the following exclusion:

---

**HABITABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to SECTION 1- COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, subsection 2. Exclusions; and COVERAGE B-PERSONAL AND ADVERTISING INJURY LIABILITY, subsection 2. Exclusions:

This insurance does not apply to any claim, allegation, demand, "suit," action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding alleging "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of:

   **a.**    Alleged or actual violation(s) of any of the following,

---

6

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

including any amendments, as they pertain to habitability or maintenance of any short-term or long-term habitational unit:

 (1) Judicial decisions including Common Law Rulings;

 (2) Civil Codes;

 (3) Health and Safety Codes;

 (4) Any Housing and Urban Development laws, regulations, ordinances or statutes;

 (5) Rent stabilization laws, regulations or ordinances;

 (6) Section 8 Housing Programs, including other federal, state and local government subsidized housing programs;

 (7) Any administrative rules or regulations pertaining to (1) through (6) above or any of those promulgated by local municipalities; or

**b.** Alleged or actual failure to maintain any premises, site or location in, or restore any premises, site or location to, a safe, sanitary, healthy, habitable and tenantable condition; or

**c.** Actual or constructive wrongful eviction arising out of a. or b. above.

This exclusion applies even if negligence or other wrongdoing is alleged in the supervision, hiring, employment, training, investigation, reporting to authorities, or monitoring of others by an insured if the "occurrence" which caused the "bodily injury," "property damage," or "personal and advertising injury" involves any one or more of a., b. or c. above.

We shall not have any duty to defend or indemnify for any claim, proceeding or "suit" in any way based on, attributed to, arising out of, resulting from or any manner related to that which is described above, including, but not limited to, the diminished value of property or mental, physical or emotional injuries alleged. This coverage limitation applies regardless of whether the habitability allegation or claim is the proximate cause of damage or injury.

18. The Scottsdale 2023 and 2024 Policies include the following exclusion:

**LIMITATION OF COVERAGE – REAL ESTATE OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to real estate operations, this insurance applies only to "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, operation, maintenance or use of:

7

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1.    Such part of any premises you use for general office purposes; and

2.    Premises listed or shown by you for sale or rental, if:

    a.    You do not own, operate, manage or rent the premises;

    b.    They are not in your care, custody, or control; or

    c.    You do not act as agent for the collection of rents or in any supervisory capacity.

19.    The Scottsdale Policies include the following exclusion:

**EXCLUSION – REAL ESTATE AGENTS OR BROKERS ERRORS OR OMISSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity.

20.    The Scottsdale Policies include the following exclusion:

**CONTINUING OR ONGOING DAMAGE EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE
FORM-COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR

The following exclusion is added to subsection 2. Exclusions of

SECTION I-COVERAGE:

8

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

This insurance does not apply to "property damage" when any of the following apply:

**Continuing Or Ongoing Damage**

1.    The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2.    The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

## THE UNDERLYING ACTION

21.    On April 25, 2025, Ricardo and Keely Daximillion ("the Daximillions") filed a lawsuit in California Superior Court, County of San Diego, against the Rosa La Gioia Family Trust dated July 20, 1998, La Gioia Living Trust Dated May 17, 2023, Alessandra Carbonara, Russ Eskilson dba Russ Eskilson Real Estate, Shore Management, Inc., Justin Hoech, Mikayla Glynn and Jordan Heller (collectively "Defendants"), entitled *Ricardo Daximillion, et al. v. Rosa La Gioia Family Trust dated July 20, 1998, et al.*, Case No. 25CU022006C, (the "Underlying Action").

22.    The Underlying Action asserts causes of action for: (1) Breach of Warranty of Habitability; (2) Breach of Warranty of Quiet Enjoyment; (3) Misrepresentation; (4) Fraud & Deceit; (5) Private Nuisance; (6) Negligence; (7) Rosenthal Act; (8) Breach of Contract; and (9) Declaratory Relief re Validity of the Lease. A true and correct copy of the Daximillion Complaint is attached as **Exhibit 4** and incorporated herein by reference.

23.    The Complaint alleges that Defendants, the Rosa La Gioia Family Trust dated July 20, 1998 and the La Gioia Living Trust Dated May 17, 2023, were the prior owners of the subject property located at 1503 Frankfort Street, San Diego in California (the "subject property"). Defendant Alessandra Carbonara was the beneficiary and/or successor trustee of the prior owners of the subject property. Russ Eskilson dba Russ Eskilson Real Estate, Shore Management, Inc. and Justin Hoech

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

1  were property managers for the subject property. The Complaint alleges that Mikayla

2  Glynn and Jordan Heller were beneficiaries or have an interest in the subject property.

3    24.    The Complaint asserts that Plaintiffs were and still are tenants of the

4  subject property pursuant to a written lease agreement dated March 1, 2019. The

5  subject property is described as a 3-bedroom, 2-bathroom single-family residence.

6    25.    The Complaint alleges that in July 2023, Defendant Carbonara inherited

7  the subject property from Rosa La Gioia. The Complaint alleges that in July 2023,

8  Defendant Carbonara terminated Defendant Eskilson and hired Shore Management

9  as the property manager for the subject property.

10    26.    On July 6, 2023, Shore Management entered into an Asset Management

11  Agreement with the Rosa La Gioia Revocable Trust which identifies Shore

12  Management as the broker and Rosa La Gioia Revocable Trust as owner of the subject

13  property. A true and correct copy of the July 6, 2023 Asset Management Agreement

14  is attached as **Exhibit 5** and incorporated herein by reference.

15    27.    On October 1, 2023, Shore Management entered into an Asset

16  Management Agreement with the Rosa La Gioia Revocable Trust which identifies

17  Shore Management as the broker and Rosa La Gioia Revocable Trust as owner of the

18  subject property. A true and correct copy of the October 1, 2023 Asset Management

19  Agreement is attached as **Exhibit 6** and incorporated herein by reference.

20    28.    The Complaint alleges that in July 2023 Defendants Carbonara, the 2023

21  Trust and Shore Management acknowledged that the subject property suffered from

22  uninhabitable conditions and represented that they would repair the same in exchange

23  for a rental increase and other terms articulated in a new Lease Agreement.

24    29.    The Complaint alleges that in July 2023, Defendants Carbonara, the

25  1998 Trust and/or the 2023 Trust and Shore Management specifically promised to

26  provide a one-year lease and repair of the property in exchange for the Daximillions'

27  agreement to consent to a rent increase. Instead, the Complaint alleges that

28

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Defendants failed to offer the Daximillions a one-year lease and failed to repair the uninhabitable conditions of the subject property.

30.    The Complaint also alleges that after Defendants provided a one-year lease which was signed by the Daximillions, Defendants voided and refused to sign it.

31.    The Complaint alleges that the subject property was uninhabitable and suffered from the following conditions all of which Defendants were aware of and failed to repair:

| | |
|---|---|
| a. | Excessive moisture, |
| b. | Dampness; |
| c. | Foul odors from the bathroom resulting from rotted and damp wood; |
| d. | Structural defects in the subfloor resulting from the termite infestation; |
| e. | Mold (within the meaning of Ca. H&S Code §17290, et seq.); |
| f. | Malfunctioning drains; |
| g. | Malfunctioning plumbing valves; |
| h. | Absence of smoke and CO2 detectors; |
| i. | Absence of GFI receptacles; |
| j. | Termite and other insect infestation; |
| k. | Dry rot; |
| l. | Peeling paint; |
| m. | Cracks and holes in walls; |
| n. | Old and worn-out, stained, and rotted flooring; |
| o. | Faulty weatherproofing; |
| p. | Lack of heat and/or adequate heat throughout the house; |
| q. | Inadequate electrical which, among other things, won't handle the load for the heater and any other small electrical appliance at the same time without tripping the circuit; |
| r. | Broken glass, which, among other things, allowed cold to enter in winter further undermining the insufficient heat produced by the heater that would not stay on if another electrical device was operated and exceeded the circuit load capacity; |
| s. | Uninhabitable kitchen; |
| t. | Uninhabitable bathroom; |
| u. | Rotted exterior rear doors; |
| v. | Malfunctioning appliances; |

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

380 108125 4904-3038-9895 .v2

w.   Broken ceiling fan;

x.   Broken thermostat;

y.   Accumulation of vegetation and overgrowth constituting potential health, fire and safety hazards around the exterior of the Property resulting from Defendants Carbonara and Shore refusal to provide the yard maintenance required of them pursuant to the lease;

z.   Defective or deteriorated flooring or floor supports;

aa.  General dilapidation and lack of maintenance inside and upon and around the exterior of the Property.

32.   The Complaint alleges that in June or July of 2024, Defendant Carbonara visited the subject property and told the Daximillions she could only fix one of their large problems – either the heating or the termite infestation. The Daximillions elected to have the heat repaired. However, they allege that Carbonara again promised to give them a one-year lease and that she would remedy the termite problem eventually.

33.   The Complaint alleges that as of the date of the Complaint was filed, Defendants had not fixed the heat or the termite infestation.

34.   The Complaint alleges that the Daximillions suffered damage to their personal property caused by a termite infestation of their living room furniture.

35.   The Complaint also alleges that the refrigerator and washing machine broke and that Defendants failed to repair or replace either. The Complaint alleges that the Daximillions were forced to incur the cost for both.

36.   The Complaint alleges that in February 2025, the bathroom flooded, and that Defendants failed to complete the repair so that the bathroom remained unusable as of the date of the Complaint was filed.

37.   The Complaint alleges that the Daximillions suffered damages as a result of the uninhabitable condition of the subject property including loss of use of the subject property, loss of the quiet use and enjoyment of the property, personal injury, emotional injury, loss of consortium, injury requiring medical care, lost wages, destruction of personal property, and other damages and injuries in amounts to be proven at trial.

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

12

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1

## THE SCOTTSDALE COVERAGE POSITION

2    38.    On or around May 5, 2025, Shore Management tendered its defense and

3  indemnity in the Underlying Action to Scottsdale under the Scottsdale Policies.

4    39.    On August 14, 2025, Scottsdale disclaimed a duty to defend or indemnify

5  Shore Management in the Underlying Action under the Scottsdale Policies. The

6  Scottsdale Position Letter is attached hereto as **Exhibit 7**.

7    40.    On December 2, 2025, Shore Management sent a letter disputing

8  Scottsdale's coverage position and demanding that a defense be provided by

9  Scottsdale in the Underlying Action.

10    41.    On January 23, 2026, Scottsdale issued a supplemental position letter to

11  Shore Management wherein Scottsdale agreed to defend Shore Management in the

12  Underlying Action subject to reserved rights including its right to seek declaratory

13  relief regarding Scottsdale's duty to defend and indemnify Shore Management in that

14  action, to seek contribution, reimbursement, and any other relief available under

15  applicable law, and to withdraw from the defense should it be determined the

16  Underlying Action presents no potential for coverage under the Scottsdale Policies.

17  In that letter, Scottsdale explained that it continues to believe there is no potential for

18  coverage and no duty to defend Shore Management in the Underlying Action based

19  on the policy provisions discussed therein. The Scottsdale Supplemental Position

20  Letter is attached hereto as **Exhibit 8**.

21

## FIRST CAUSE OF ACTION

22

### (Declaratory Relief-No Coverage)

23

### (Against All Defendants)

24    42.    Scottsdale repeats and incorporates by reference all preceding

25  paragraphs above, in their entirety, as though fully set forth herein.

26    43.    Plaintiff's interest in the Scottsdale Policies is as the insurer. Defendants

27  Shore Management and Justin Hoesch's interest is as the insureds. The Daximillions'

28  interests are as potential third-party creditors.

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

44.    Scottsdale is informed and believes and thereon alleges that the Daximillions contend that the Scottsdale Policies afford coverage to Shore Management for the Underlying Action.

45.    An actual, present, and bona fide controversy now exists between Scottsdale, Shore Management, and the Daximillions regarding their respective rights duties, and obligations under the Scottsdale Policies with respect to the Underlying Action.

46.    Scottsdale has no adequate remedy at law to resolve the controversy.

47.    A judicial declaration is necessary to establish the parties' rights and duties with respect to the Scottsdale Policies.

48.    Scottsdale seeks a declaration that Scottsdale has no duty to defend or indemnify Shore Management in connection with the Underlying Action under the Scottsdale Policies and that Scottsdale has no duty to indemnify the Daximillions in connection with any judgment they obtain against Shore Management in the Underlying Action.

## SECOND CAUSE OF ACTION

### (Declaratory Relief-No Duty to Defend)

### (Against Shore Management and Hoesch)

49.    Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

50.    Scottsdale contends it did not and does not owe any duty to defend Shore Management and/or Hoesch in the Underlying Action, as a matter of law, because, among other reasons:

a.    Each of the Scottsdale Policies include a Habitability Exclusion which applies to the claims asserted against Shore Management in the Underlying Action.

b.    Each of the Scottsdale Policies include a Real Estate Agents or Brokers Errors or Omissions Exclusion which applies to the claims asserted against

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  Shore Management in the Underlying Action.

2      c.    The Scottsdale 2023 and 2024 Policies include a Real Estate

3  Operations Limitation Endorsement which applies to the claims asserted against

4  Shore Management in the Underlying Action.

5      51.    Scottsdale is informed and believes, and thereon alleges, that Shore

6  Management and/or Hoesch dispute the foregoing contentions.

7      52.    An actual controversy has arisen and now exists between Scottsdale, on

8  the one hand, and Shore Management and/or Hoesch, on the other hand, with respect

9  to whether Scottsdale has a duty to defend Shore Management and/or Hoesch in the

10  Underlying Action.

11      53.    Scottsdale does not have an adequate remedy at law. A judicial

12  declaration is necessary to establish the parties' rights under the Scottsdale Policies.

13      54.    Given the above stated controversy, Scottsdale respectfully requests a

14  judicial determination and declaratory judgment that Scottsdale is not obligated under

15  the Scottsdale Policies to defend Shore Management and/or Hoesch in the Underlying

16  Action.

17  ### THIRD CAUSE OF ACTION

18  **(Declaratory Relief-No Duty to Indemnify)**

19  **(Against Shore Management and Hoesch)**

20      55.    Scottsdale repeats and incorporates by reference all preceding

21  paragraphs above, in their entirety, as though fully set forth herein.

22      56.    Scottsdale contends it has no duty to indemnify Shore Management

23  and/or Hoesch in the Underlying Action, as a matter of law, because, among other

24  reasons:

25      a.    Each of the Scottsdale Policies include a Habitability Exclusion

26  which applies to the claims asserted against Shore Management in the Underlying

27  Action.

28      b.    Each of the Scottsdale Policies include a Real Estate Agents or

15

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Brokers Errors or Omissions Exclusion which applies to the claims asserted against Shore Management in the Underlying Action.

        c.     The Scottsdale 2023 and 2024 Policies include a Real Estate Operations Limitation Endorsement which applies to the claims asserted against Shore Management in the Underlying Action.

57.    Scottsdale is informed and believes, and thereon alleges, that Shore Management and/or Hoesch dispute the foregoing contention.

58.    An actual controversy has arisen and now exists between Scottsdale, on the one hand, and Shore Management and/or Hoesch, on the other hand, with respect to whether Scottsdale has a duty to indemnify Shore Management and/or Hoesch for the causes of action asserted against Shore Management in the Underlying Action.

59.    Scottsdale does not have an adequate remedy at law. A judicial declaration is necessary to establish the parties' rights under the Scottsdale Policies.

60.    Given the above stated controversy, Scottsdale respectfully requests a judicial determination and declaratory judgment that Scottsdale is not obligated under the Scottsdale policies to indemnify Shore Management and/or Hoesch in the Underlying Action.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief – No Duty to Indemnify)

### (Against the Daximillions)

61.    Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

62.    On information and belief, Scottsdale understands that should the Daximillions obtain a judgment against Shore Management and/or Hoesch they will seek to enforce that judgment under the Scottsdale Policies, as provided under Insurance Code section 11580(b)(2).

63.    On information and belief, Scottsdale anticipates that should the Daximillions obtain a judgment against Shore Management and/or Hoesch they will

16

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  assert they are third-party beneficiaries of the Scottsdale Policies and will bring a

2  direct action against Scottsdale to pay the judgment against Shore Management and/or

3  Hoesch under those policies.

4      64.    Scottsdale contends that under the Scottsdale Policies, it has no

5  obligation to indemnify the Daximillions should they obtain a judgment against Shore

6  Management and/or Hoesch in the Underlying Action because coverage is barred for

7  the following reasons:

8      a.    Each of the Scottsdale Policies include a Habitability Exclusion

9  which applies to the claims asserted against Shore Management in the Underlying

10  Action.

11      b.    Each of the Scottsdale Policies include a Real Estate Agents or

12  Brokers Errors or Omissions Exclusion which applies to the claims asserted against

13  Shore Management in the Underlying Action.

14      c.    The Scottsdale 2023 and 2024 Policies include a Real Estate

15  Operations Limitation Endorsement which applies to the claims asserted against

16  Shore Management in the Underlying Action.

17      65.    Scottsdale is informed and believes, and thereon alleges, that the

18  Daximillions dispute the foregoing contentions.

19      66.    An actual controversy has arisen and now exists between Scottsdale, on

20  the one hand, and the Daximillions, on the other hand, with respect to whether

21  Scottsdale owes the Daximillions indemnity in the Underlying Action.

22      67.    Scottsdale does not have an adequate remedy at law. A judicial

23  declaration is necessary to establish the parties' rights under the Scottsdale Policies.

24      68.    Given the above stated controversy, Scottsdale respectfully requests a

25  judicial determination and declaratory judgment that Scottsdale is not obligated under

26  the Scottsdale Policies to indemnify the Daximillions for the Underlying Action.

27      //

28      //

17

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

## FIFTH CAUSE OF ACTION

### (Defense Expenses)

### (Against Shore Management and Hoesch)

69.    Scottsdale repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

70.    As a matter of law, Scottsdale never had a duty to defend Shore Management against the claims asserted in the Underlying Action because those claims were not even potentially covered under the Scottsdale Policies.

71.    Because none of the claims were potentially covered under the Scottsdale Policies, and because Scottsdale has no obligation to provide Shore Management with a defense to claims which are not covered under the Scottsdale Policies, Scottsdale has been damaged with respect to expenses incurred for the defense of uncovered claims.

72.    Accordingly, Scottsdale is entitled to reimbursement from Shore Management for defense expenses in an amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Scottsdale prays for judgment as follows:

1.    With respect to the First Cause of Action, for judicial declaration that the Scottsdale Policies do not provide coverage for the claims asserted against Shore Management and/or Hoesch in the Underlying Action.

2.    With respect to the Second Cause of Action, for a judicial declaration that Scottsdale has no duty to defend Shore Management and/or Hoesch against the Underlying Action, as a matter of law;

3.    With respect to the Third Cause of Action, for a judicial declaration that Scottsdale has no duty to indemnify Shore Management and/or Hoesch for the Underlying Action, as a matter of law;

4.    With respect to the Fourth Cause of Action, for a judicial declaration that Scottsdale does not owe the Daximillions indemnity for the Underlying Action, as a

18

SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

matter of law;

5.    With respect to the Fifth Cause of Action, for a judicial declaration that Scottsdale is entitled to reimbursement from Shore Management and/or Hoesch for defense expenses incurred to defend them in the Underlying Action;

6.    For a judicial declaration that defendants, and each of them, be bound by the findings, rulings, and order of this Court with respect to the Scottsdale Policies.

7.    For costs of suit, including attorneys' fees incurred herein; and

8.    For such other and further relief as the Court may deem just and proper.

DATED: January 30, 2026         SELMAN LEICHENGER EDSON
                                HSU NEWMAN & MOORE LLP


                                By:    /s/ Debra B. Branse
                                       SHERYL W. LEICHENGER
                                       DEBRA B. BRANSE

                                       Attorneys for Plaintiff
                                       SCOTTSDALE INSURANCE
                                       COMPANY

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

19
SCOTTSDALE'S COMPLAINT FOR DECLARATORY RELIEF

380 108125 4904-3038-9895 .v2